STATE OF MISSOURI at the relation of MARY OLIVIA WEAVER, Relator, v. MISSOURI WORKMEN'S COMPENSATION COMMISSION and EDGAR C. NELSON, ORIN H. SHAW and JAY J. JAMES as Members and Commissioners constituting the WORKMEN'S COMPENSATION COMMISSION.—95 S. W. (2d) 641.

Court en Banc, July 2, 1936.*

---

*NOTE: Opinion filed at September Term, 1935, April 27, 1936; motion for rehearing filed; motion overruled at May Term, July 2, 1936.

*William R. Schneider* and *Frank E. Atwood* for relator.

· *Roy McKittrick*, Attorney General, and *Covell R. Hewitt*, Assistant Attorney General, for respondents.

*A. A. Alexander, amicus curiae.*

154

COLLET, J.—Mandamus to compel the Missouri Workmen's Compensation Commission and the individual members thereof to accept jurisdiction of a claim for compensation under the Missouri Workmen's Compensation Law. The facts are as follows:

On and for some time prior to November 27, 1934, James Weaver was a resident of the State of Missouri, employed by the Norwich Pharmacal Company of Norwich, New York, as a salesman. His employment consisted in calling on customers soliciting orders for drugs. The contract of employment was executed in the State of Illinois. On November 27, 1934, while in the course of his employment Weaver's car accidentally skidded off the road and into a tree in St. Louis County, Missouri, resulting in injuries which caused his death. He left surviving him his widow, also a resident of Missouri, and two minor children. At the time of Weaver's employment and thereafter, there was in full force and effect in the State of Illinois a Workmen's Compensation Law (Chap. 48, Cahill's Ill. R. S. 1933), which provided that the Illinois Compensation Law should apply to any injury received outside the State of Illinois, under contract of employment made within the State of Illinois. [Sec. 205, Chap. 48, Cahill's Ill. R. S. 1933, p. 1379.]

Mary Olivia Weaver, the widow of James Weaver, thereafter applied to the Missouri Workmen's Compensation Commission for compensation under the Missouri law. The Missouri statute is as follows:

"(a) This chapter shall apply to all cases within its provisions except those exclusively covered by any federal law.

"(b) This chapter shall apply to all injuries received in this state, regardless of where the contract of employment was made, and also to all injuries received outside of this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide." [Sec. 3310, R. S. 1929.]

The Missouri Workmen's Compensation Commission declined to take jurisdiction of the application upon the grounds that (1) since the contract of employment was made in Illinois, the Missouri statute (subsection (b), supra) does not apply, and (2) that even if the Missouri statute did apply the Missouri Commission should decline jurisdiction because the Illinois law also applies and must, under the full faith and credit clause of the Federal Constitution, be given effect in Missouri.

The determination of the question of whether the Missouri

statute applies in this particular case depends upon the proper construction to be given the Missouri statute. For convenience we repeat it here, breaking it up into its separate provisions and numbering each for convenient reference:

"This chapter shall apply

"(1) to all injuries received in this state, regardless of where the contract of employment was made, ·

"(2) and also to all injuries received outside of this state under contract of employment made in this state,

"(3) unless the contract of employment in any case shall otherwise provide."

Relator contends that clause (3) relates to and limits clause (2) only. Or, otherwise stated, that for the purposes of this case the material part of the section should read:

"This chapter shall apply to all injuries received in this state, regardless of where the contract of employment was made."

Respondents contend that clause (3) refers to both clauses (1) and (2) and that therefore for the purposes of this case clause (1) should read:

"This chapter shall apply to all injuries received in this state, regardless of where the contract of employment was made, unless the contract of employment in any case shall otherwise provide."

In our judgment the latter construction is proper. There is nothing in the language or punctuation used to indicate that clause (3) was intended to apply to clause (2) alone. Only a comma separates clause (1) from clause (2). More important is the presence of the words "in *any* case" in clause (3). If these words had been eliminated relator's position would be materially stronger. But the words "in any case" in the manner used are unequivocal and all-embracing and cannot apply to only one of the two clauses of equal standing in the same sentence. It might be properly observed that if the word "such" or some word of similar import had been interposed in clause (3) making it read, "unless the contract of employment in *any* such case shall otherwise provide," the all-embracing, far-reaching effect of the word "any" would have been minimized and restricted to such an extent that possibly the words "in any such case" could have been construed to apply to less than all and to only those cases described by clause (2).

We do not agree with relator's argument to the effect that this construction renders the latter part of clause (1)—"regardless of where the contract of employment was made," redundant and meaningless. If the "regardless" clause had been eliminated making subsection · (b) read:

"This chapter shall apply to all injuries received in this state, and also to all injuries received outside of this state under contract

of employment made in this state, unless the contract of employment in any case shall otherwise provide," the impression conveyed would have been somewhat different and the words "unless the contract of employment in any case" might possibly have been held to refer to the only classification of cases where contracts of employment were mentioned, to-wit, clause (2), whereas the section with the "regardless" clause remaining in it, refers to contracts of employment in both clauses (1) and (2). Its presence removes the impression which might arise from the juxtaposition of the words "in any case" to the words "contract of employment" and the use of the words "contract of employment" in only clause (2) (if the "regardless" clause had been eliminated), that clause (3) referred only to clause (2).

Subsection (b) was construed in Weiderhoff, Inc., v. Neal, 6 Fed. Supp. 798, in the same manner we have construed it. The question under consideration was not before the court in the cases of Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) 130, and Bolin v. Swift & Co., 335 Mo. 732, 73 S. W. (2d) 774, hence those cases are not controlling on this point.

But does the contract of employment in this case provide that the Missouri Compensation Act shall not apply to injuries received in this State? The record does not disclose whether the contract was written or parol, neither does it definitely appear that there was no express agreement between the parties on the subject, but since the strong inference is to the effect that there was no express understanding that the Missouri Act should not apply we adopt that inference as a fact for the determination of this case only.

The parties apparently assume that because the contract was entered into in Illinois, the terms of the Compensation Act of that State shall be considered a part of this contract because it was made within that State, and, that since the Illinois law was a part of this contract and that law provided that it should apply it must necessarily follow that the contract of employment in this case provides that the Illinois act shall apply and a fortiori that the Missouri act does not. If we adopt the assumption that the contract in this case provides that the Illinois law shall apply and the Missouri act shall not, the assumption must be based upon the theory that the Missouri Legislature in enacting clause (3) of subsection (b), supra, intended that the word "contract" should not mean an express agreement between the parties, but an agreement with all of the provisions of the Compensation Law of any state in which the contract happened to be executed read into the contract. Or, stated differently, it would be necessary to assume that clause (3) read substantially as follows:

"Unless the (agreement of the parties or the provisions of the compensation laws of the state where the contract of employment is

executed and wherein such laws are considered a part of employment contracts), in any case shall otherwise provide.''

We do not think the Legislature so intended, but did intend that the word ''contract,'' as there used, should be given its usual and ordinary meaning as a meeting of the minds of the parties upon the subjects to which the agreement related. The contract not otherwise providing, the Missouri Compensation Law applies.

 It must be borne in mind that in the determination of the proper meaning to be given our own statute, we are not concerned with the problem of whether an Illinois contract will be enforced as containing the provisions of the Illinois law. The question of whether we will enforce the Illinois contract with the Illinois Compensation Act appended thereto or, failing to do so decline to accept jurisdiction and relegate the parties to the Illinois Compensation Commission to pursue their remedies there, is to be determined later when we come to consider the question of whether we will subordinate our own applicable act to the act of Illinois because of the requirement of the full faith and credit clause of the Federal Constitution. It may be true that the Illinois Compensation Act is a part of all employment contracts of the character under consideration which are made in that state (a point we are not determining) and, for the same reason which requires that the law of the state where a note or contract is executed is determinative of the rights and liabilities of the parties thereto, must, by virtue of the full faith and credit clause be enforced as the law of the case when the contract is being enforced in any court in any state, yet we are not now determining what the terms of the Illinois contract may be or whether we shall, because of the full faith and credit clause, give that contract, including the Illinois law, effect in this State. We are now simply construing our own statute for the purpose of determining whether it applies. Having construed our statute and finding it applicable the result is that a new and different relationship was created between the parties simultaneously with and because of its application.

The Missouri law applying, the Illinois act also applying, and each providing that its remedy is in lieu of all others, the two statutes and the relationship created by each are brought into direct conflict. It is insisted by respondents and *amicus curiae* that under these circumstances the full faith and credit clause of the Federal Constitution requires that the State of Missouri give effect to the Illinois statute rather than its own.

A number of cases are cited which discuss the controlling effect to be given the full faith and credit clause. We need only refer to the case of Alaska Packers' Assn. v. Industrial Accident Commission of California, 294 U. S. 532, 55 Sup. Ct. 518, 79 L. Ed. 1044, since

that case clearly states the rule applicable in this case and reconciles what might seem to be inconsistencies between former decisions.

In the case mentioned one Palma, a nonresident alien, was employed at San Francisco by the Alaska Packers' Association which was doing business in California and Alaska, to work for it in Alaska during the salmon canning season. The contract was in writing and recited that the employer had elected to be bound by the Alaska Workmen's Compensation Law and stipulated that the parties should be subject to and bound by the provisions of that statute. The employer was to transport Palma to Alaska and return him to San Francisco. He was to be paid at San Francisco upon his return. The California statute provided that the commission of that state should have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of the state in cases where the contract of employment was made in the state. The Alaska act provided a remedy for the injury which occurred there. Each act provided that the liability imposed and the remedy given by it were in lieu of all others for the injury suffered. The California act did not purport to provide, by regulation of the contract of employment or otherwise, that the parties might not resort, without the state, to other remedies given by the statutes in force at the place of injury. Palma was injured in Alaska and upon his return to California applied to the California Commission for an award in compensation for his injuries. The award was made and on appeal affirmed, by the California Supreme Court (Alaska Packers' Assn. v. Ind. Acc. Comm. of Cal., 34 Pac. (2d) 716) and again affirmed on appeal to the Supreme Court of the United States. In both the Supreme Court of California and the Supreme Court of the United States the defense was urged that the Alaska statute conflicted with the California statute and therefore the full faith and credit clause compelled recognition of the Alaska statute as a defense to the proceeding before the California Commission. The Supreme Court summarized the conclusion reached by the California Supreme Court as follows:

"Since each statute provides a different remedy, the court recognized that, by setting up the Alaska statute as a defense to the award of the Commission, the two statutes were brought into direct conflict. It resolved the conflict by holding that the courts of California were not bound by the full faith and credit clause to apply the Alaska statute instead of its own."

The following language of the United States Supreme Court leaves no doubt that the question before us in this case was also before the court in the case under discussion.

"To the extent that California is required to give full faith and credit to the conflicting Alaska statute, it must be denied the right to apply in its own courts a statute of the state, lawfully enacted in pursuance of its domestic policy. . . . The subject of our in-

quiry is therefore whether the full faith and credit clause requires the State of California to give effect to the Alaska statute rather than its own.''

In determining that question the court said:

''It has often been recognized by this Court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in contravention of its own statutes or policy. (Citing cases.)

''In the case of statutes, the extra-state effect of which Congress has not prescribed, where the policy of one state statute comes into conflict with that of another, the necessity of some accommodation of the conflicting interests of the two states is still more apparent. A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own. Unless by force of that clause a greater effect is thus to be given to a state statute abroad than the clause permits it to have at home, it is unavoidable that this Court determine for itself the extent to which the statute of one state may qualify or deny rights asserted under the statute of another. (Citing cases.)

''The necessity is not any the less whether the statute and policy of the forum is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceedings under the local statute. In either case, the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. *In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight.''* (Italics ours.)

''The enactment of the present statute of California was within state power and infringes no constitutional provision. Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum. It follows that not every statute of another state will override a conflicting statute of the forum by virtue of the full faith and credit clause; that the statute of a state may sometimes override the conflicting statute of another, both at home and abroad; and, again, that the two conflicting statutes may each prevail over the other at home, although given no extraterritorial effect in the state of the other.''

160

With the course of the law so clearly charted the determination of the question before us becomes a simple problem.

From the rather meager facts which are disclosed by the record before us it appears that Weaver was a citizen and resident of Missouri at the time of his accidental death; that the discharge of his duty to his employer required his presence in this State at the time of his injury and that his employer was domiciled in the State of New York and as far as this record shows has no business or property interests in the State of Illinois. In addition to that Weaver had a wife and two minor children living in Missouri at the time of his death who are alleged to be citizens of this State at the present time, although temporarily absent therefrom. On the other hand the sole basis for the claim of the superior governmental interest of the State of Illinois lies in the fact that the contract of employment was made in that state. In the case last above referred to the Supreme Court held that the possibility of a remedy not being available to Palma if he was required to return to Alaska to prosecute his claim, coupled with the danger that he might become a public charge of the State of California amply supported the claim that the State of California had a governmental interest superior to the similar interest of Alaska where the injury occurred. In the case before us, one, if not both, of those considerations prompt the application of the Missouri law by the Missouri Commission. In addition the record fails to disclose the existence of any substantial governmental interest of the State of Illinois in the employer or employee or their contractual relations.

Under the facts before us the Missouri Workmen's Compensation Commission was not justified in declining to accept jurisdiction of the claim for compensation. Our peremptory writ of mandamus should be issued. It is so ordered. All concur.